BENJAMIN F. STAATS and LOTTIE STAATS,

*vs.*

ARTHUR HUBBARD and ELIZABETH HUBBARD.

*New Castle, February 4, 1949.*

*Robert C. Barab,* for plaintiffs.

*Thomas R. Hunt,* of the firm of Hastings, Stockly, Walz & Wise, for defendants.

SEITZ, Vice-Chancellor: This is a dispute between neighbors over the flowage of surface water from one property to another. Defendants have moved to dismiss the complaint.

Plaintiffs own a piece of land known as 205 Jefferson Avenue, Wilmington Manor, on which their home and garage are erected, while the defendants have an adjoining property known as 203 Jefferson Avenue. Plaintiffs claim that their property is being irreparably damaged by surface and drainage water being diverted in great quantities from the defendants' land. They allege that the diversion is caused by the fact that the defendants have raised the level of their land above the level of plaintiffs' land. Plaintiffs allege that their land and cinders are washed away and eroded, and their cellar and garage are flooded with such unlawfully diverted water whenever there is a heavy rainfall. It is also alleged that the diversion of water could be prevented if the defendants would lower their land to its original level in line with plaintiffs' land, or would construct a retaining wall along the boundary line.

Plaintiffs pray that an injunction issue restraining the defendants from diverting their drainage and surface water onto plaintiffs' land, and that a mandatory injunction issue directing the defendants either to lower the level of their land so that drainage and surface water will not be diverted onto plaintiffs' land, or in the alternative to erect a retaining wall to prevent such diversion. There is also a prayer for damages.

The defendants' attorney has filed a motion which it is agreed should be treated as a motion to dismiss the complaint for failure to state a cause of action. As I understand the defendants' argument, they contend that the complaint fails to state a cause of action because a property owner may permit the flow of surface water and get rid of it in any way he can, provided only that he does not cast it by drains or ditches upon the land of his neighbor.

Defendants argue that the complaint shows no violation of the stated principle. They rely on the case of *Chorman v. Queen Anne's R. Co.*, 3 *Pennewill* 407, 416, 54 *A.* 687.

Plaintiffs take the position that when the defendants raised the surface of their land and thereby caused their surface water to be cast upon the plaintiffs' land in such volumes that it damaged plaintiff's property, they unlawfully interfered with plaintiffs' enjoyment of their property. In consequence, plaintiffs say they are entitled to equitable relief to protect such enjoyment

It is, of course, an extreme example of naivete to state that neighbors should not have to litigate such matters. The vagaries of the human mind, especially when accompanied by righteous indignation, are wondrous to behold.

The facts alleged do not require me to state the legal principles applicable where surface water flows from one neighbor's property to another as a result of the so-called "natural" contour of the land. Plaintiffs' complaint here is based on the alleged fact that defendants raised the level of their land and thereby caused their surface water to flow onto plaintiffs' land in damaging quantities whenever it rained hard. I think it fair to infer from the pleadings that prior to the time the defendants raised the level of their land their surface water either did not flow onto plaintiffs' land, or did so without injurious consequences.

Defendants contend that since they did not accumulate and cast their surface water onto plaintiffs' land by means of "drains or ditches", they did no wrong since they are entitled to get rid of their surface water in any way they can.

Is there any legal magic about the "drains or ditches" terminology? I think not. The use of such terms in stating such a legal principle is obviously not exclusive. The governing principle of law in this field must reflect some practical adjustment of conflicting interests. Indeed, the appli-

cation of plain common sense is still the only real solution for disputes of this type between neighbors.

Preliminarily, the parties are in agreement that we are here dealing with "surface water" as commonly defined. See 1 *Tiffany on Real Property*, (*2nd Ed.*) § 341. Apparently the only Delaware case discussing property rights as they are affected by surface water is *Chorman v. Queen Anne's R. Co., supra*. There, the defendant railroad cut a ditch along its tracks which caused a large quantity of surface water to flow upon plaintiff's wheat field with a resultant destruction of plaintiff's wheat. Plaintiff brought an action at law for damages and the court discussed the applicable law in its charge to the jury. The court said that it was dealing "only with the principles of law which govern the throwing of surface water from the land of one owner into and upon the land of a neighboring owner." [3 *Pennewill* 407, 54 *A.* 690] The court cited and quoted from numerous cases which, summarized generally, state that an upper proprietor may not by changing the natural contour cause surface water to be collected and thrown upon his neighbor's land with a resultant material injury to such land.

Did these defendants, by raising the level of their land, thereby causing their surface water to flow onto plaintiffs' land with resultant material damage, cause surface water to be collected and thrown upon plaintiffs' land in violation of the legal principle mentioned? If the act here alleged is not within that principle, is the act otherwise objectionable?

Cases in some jurisdictions indicate that the mere raising of the surface of one's property, no matter what its effect on the surface water, does not constitute a violation of the legal principle which prevents the collecting and casting of surface water on another's land. E.g., *Nathanson v. Wagner*, 118 *N.J. Eq.* 390, 179 *A.* 466; *Lare v. Young*, 153 *Pa. Super.* 28, 33 *A.* 2d 662. Other cases would seem to grant relief where the change causes the surface water to be discharged in a materially different volume with re-

sultant damage. E.g., *Rutka v. Rzegocki*, 132 *Conn.* 319, 43 *A. 2d* 658; *Steed v. Kimbrough*, 197 *Miss.* 430, 19 *So. 2d* 925.

I fail to see any distinction here material between the situation where a person digs a ditch which drains surface water onto his neighbor's land, and the situation where a person elevates the surface of his land and thereby causes surface water to flow onto his neighbor's land. Compare *Adams v. Walker*, 34 *Conn.* 466, 91 *Am. Dec.* 742. Certainly to view the situation otherwise is to give weight to a distinction without a difference—especially from the viewpoint of the injured neighbor.

It seems to me that in situations such as the one presented by this complaint the test of reasonable user should be applied. As the author states in 56 *Harvard Law Review, pp.* 772, 783:

"Where, however, that has been an act of man which has altered or accelerated the flow of natural surface water to the plaintiff's land, there has been a tendency to make the question of liability depend on the doctrine of reasonable user."

I conclude that the complaint states a claim for equitable relief where, as here, it is charged that the defendants by raising the level of their land have caused and will obviously continue to cause their surface water to be cast upon plaintiffs' land with resultant material injury to the plaintiffs' land. I feel that my conclusion is well within the spirit of the principles announced in the *Chorman* case. The adoption of the stated legal principle is no impediment to the reasonable improvement of land. It merely requires one to be conscious of the effect of his actions on his neighbors. The factual picture presented at the hearing will determine the nature of the relief, if any, that may be granted. Compare *Whitman b. Forney*, 181 *Md.* 852, 31 *A.2d* 630, 633. In arriving at this conclusion, I hasten to emphasize that the injury must be "material" before the court will grant relief. The motion to dismiss the complaint will be denied.

An order accordingly will be advised on notice.